UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIO CHRISTIAN, | : |
| | : CIVIL ACTION NO. 3:15-CV-284 |
| Plaintiff, | : |
| | : (JUDGE CONABOY) |
| v. | : |
| | : |
| "INDIVIDUAL PAROLE OFFICERS" | : |
| at Board of Probation and Parole, | : |
| in Harrisburg, | : |
| | : |
| Defendants. | : |
| | : |

FILED
SCRANTON
JUN 08 2015
PER ___ CR
DEPUTY CLERK

**MEMORANDUM**

**I. Background**

Here we consider for initial screening the *pro se* complaint filed by Plaintiff Julio Christian on February 10, 2015, pursuant to 42 U.S.C. § 1983. (Doc. 1.)  His Complaint contains sixty-four numbered paragraphs alluding to wrongdoing related to the revocation of parole, threats of potential continued detention based on allegedly false information, and other vague allegations of retaliation for exercising constitutional rights.  (Doc. 1 at 1-6.)  Plaintiff seeks the following relief: "declaratory and injunctive relief"; "recovery in compensatory damages"; "seek to enjoin parole proceeding criminal prosecution"; and "seek constitutional liberty."  (Doc. 1 at 6.)  He clarifies that he is suing Defendants in their individual capacities.  (*Id.*)  Though not named in the caption, Plaintiff filed this action against individual Defendants Cindy S. Johnson, James Ellis, Michael Green, Charles Demarko Spriggs, and Diana Kalback.  (*See* Docket.)

Plaintiff identifies Defendant Johnson as a parole officer and Defendant Kolback as a parole agent. (Doc. 1 ¶¶ 39, 51.) He says that Defendants Ellis, Green, Demarko Spriggs, and Kolback conducted "a criminal proceeding" against him on February 27, 2007, and that they "acted to prosecute him at SCI-Graterford." (Doc. 1 ¶ 50.)

## II. Discussion

### A. *Screening of Pro Se Complaint Standard*

Plaintiff--an inmate currently confined at SCI-Rockview, Bellafonte, Pennsylvania--requests to proceed in forma pauperis. (*See* Doc. 8.) Pursuant to 28 U.S.C. § 1915A, we are directed to screen a complaint as soon as practicable after filing when a prisoner seeks redress from a government entity or officer or an employee of a government entity. 28 U.S.C. § 1915A(a). We are directed to dismiss the complaint or portions thereof if the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Similarly, when a plaintiff proceeds in forma pauperis, we are to dismiss the case at any time if we determine that the action meets the criteria set out above. 28 U.S.C. § 1915(e)(2)(B). This subsection "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the

costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). *Neitzke* further explains:

> To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit . . . and claims of infringement of a legal interest which clearly does not exist . . . . Examples of the latter class are claims describing fantastic or delusional scenarios.

*Id.* at 327-28. The United States Court of Appeals for the Third Circuit has added that "the plain meaning of the term 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." *Deutsch v. United States*, 67 F.3d 1080, 1083 (3d Cir. 1985).

The standard for failing to state a claim under § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is the same as that under Federal Rule of Civil Procedure 12(b)(6). *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). In short, to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

**B. *Screening***

As noted above Plaintiff's Complaint contains sixty-four numbered paragraphs alluding to wrongdoing related to the revocation of parole, threats of potential continued detention based on allegedly false information, and other vague allegations of retaliation for exercising constitutional rights. (Doc. 1 at 1-6.) We emphasize the vagueness of these allegations in proceeding with our analysis and discussing the bases upon which we conclude this action is properly dismissed.

**1.   Federal Rule of Civil Procedure 8**

Plaintiff's Complaint apprises Defendants that they are being sued pursuant to 42 U.S.C. § 1983, that they are being sued in their individual capacities and that Plaintiff is seeking the following relief: "declaratory and injunctive relief"; "recovery in compensatory damages"; "seek to enjoin parole proceeding criminal prosecution"; and "seek constitutional liberty." (Doc. 1 at 1, 6.) Long on conclusions and sparse on facts, we glean the following substantive allegations from the vague assertions presented: Plaintiff's parole was revoked in 2005 (*see, e.g.*, Doc. 1 ¶¶ 5-6); he believes the revocation was improper and based on an allegedly false report (*id.*); a case related to his revocation was "nolle prossed" (*see, e.g.*, Doc. 1 ¶ 7); a parole officer threatened to use an allegedly false report against him in the future to detain

4

him (*see, e.g.*, Doc. 1 ¶ 2); Defendant Johnson (a parole officer) played a part in the revocation, a proceeding in October 2006, and other matters including transferring Plaintiff to another institution (Doc. 1 ¶¶ 38-40); and Defendants Ellis, Green, Demarko Spriggs, and Kalback "conducted a criminal proceeding against him on February 22, 2007, . . . and acted to prosecute him at SCI-Graterford" (Doc. 1 ¶ 50).

Plaintiff has previously been apprised of Rule 8's requirements, including the fact that "[d]ismissal under Rule 8 is . . . proper when a complaint 'left the defendants having to guess what of the many things discussed constituted [a cause of action].'" *Christian v. State*, Civ. A. No. 4:14-CV-00857 (M.D. Pa. filed June 24, 2014) (quoting *Binsack v. Lackawanna County Prison*, 438 F. App'x 158 (3d Cir. 2011)). As in cases deemed subject to dismissal where the "true substance, if any, is well disguised," *id.* (citing *Simmons v. Apruzzo*, 49 F.3d 83, 86 (2d Cir. 1995); *Tillio v. Spiess*, 441 F. App'x 109, 110 (3d Cir. 2011): *Tillio v. Northland Grp. Inc.*, 456 F. App'x 78, 79 (3d Cir. 2012)), Plaintiff's complaint is subject to dismissal based on his failure to comply with Rule 8's requirement that he provide a "short and plain statement of the claim" showing that he is entitled to relief, Fed. R. Civ. P. 8(a)(2).

We will delay our discussion of whether Plaintiff is entitled to be given leave to amend his complaint. While district courts

5

should allow leave to amend prior to dismissal unless amendment would be futile, *see Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002), at this stage of our analysis we cannot properly assess the futility of amendment.

2. **Statute of Limitations**

We now turn to a review the timeliness of Plaintiff's filing. This review reveals that certain matters about which Plaintiff complains are too remote in time to form an adequate basis for this action.

Claims brought pursuant to 42 U.S.C. § 1983 are subject to the pertinent state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006). Pennsylvania's statute of limitations for personal injury actions is two years. 42 Pa. C.S. § 5524. "[T]he limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). "'[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 157) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *see also Cibula v. Fox*, 570 F. App'x 129, 135-36 & n.7 (3d Cir. 2014) (not precedential) (applying

*Mandel* to prisoner 42 U.S.C. § 1983 action).

While ordinarily an affirmative defense, statute of limitations considerations may be raised in a screening review, as explained by the Third Circuit Court of Appeals in *Smith v. Delaware County Court*, 260 F. App'x 454, 455 (3d Cir. 2008).

> Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, a district court may *sua sponte* dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *see also Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656-57 (4th Cir. 2006) (citation omitted) (finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered *sua sponte*.").

260 F. App'x at 455. In *Smith*, the Circuit Court agreed with the District Court that the plaintiff's complaint was untimely filed and that a limitations defense was evident from the face of the complaint and, thus, the plaintiff's claims were properly dismissed as untimely. *Id.*

Here we can determine from the face of the Complaint that Plaintiff's allegations relating to reports issued in 2005 (*see, e.g.*, Doc. 1 ¶ 5), proceedings against him in October 2006 (*see, e.g.*, Doc. 1 ¶ 50), and threats made regarding his cooperation in

7

October 2006 (*see, e.g.,* Doc. 1 ¶ 52), are barred by the applicable statute of limitations. Similarly, vague allegations regarding improper revocation of parole (*see, e.g.,* Doc. 1 ¶ 42) are time-barred as Plaintiff's parole was revoked in 2005.[1] The nature of the claims indicates that Plaintiff knew about them long before the limitations period ran.

Plaintiff alleges "[a] continuing deprivation of rights" and "repeated actions in wrongdoing were likely to recur in the future." (Doc. 1 ¶¶ 21, 22.) Although the continuing violation theory may apply in such a situation, Plaintiff cannot avoid the application of the statute of limitations with the conclusory assertions contained in his complaint.

Under the continuing violation doctrine, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" *Montanez v. Secretary Pennsylvnaia Dep't of Corrections*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)); *see also Cibula v. Fox*, 570 F. App'x 129, 135 (3d Cir. 2014) (not

---

[1] We also note that Plaintiff's assertions regarding improper parole revocation, if timely, would be subject to the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). *See McKinney v. Pennsylvania Board of Probation and Parole*, 405 F. App'x 646, 647 (3d Cir. 2010) (not precedential) (citing *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (holding that where success in a § 1983 action would imply the invalidity of a decision to revoke parole that has not been otherwise rendered invalid, the action is *Heck*-barred).)

precedential). As explained in *Cowell*, the continuing violation doctrine is an equitable exception to the timely filing requirement. 263 F.3d at 292. *Cibula* set out the relevant inquiry: "To determine whether a practice was continual, we consider (1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." 570 F. App'x at 135 (citing *Mandel*, 706 F.3d at 165-67).[2] A plaintiff must also point to an affirmative act that took place within the limitations period for the doctrine to apply. *Cibula*, 570 F. App'x at 135 (citations omitted). The subject matter inquiry concerns "whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation." *Id.* The frequency inquiry concerns "whether the acts are recurring or more in the nature of isolated incidents." *Id.*

Here the revocation of parole, falsified reports, proceedings against him, and threats made were all discrete acts with different subject matter. *Id.* Though parole is a thread that may connect some allegations contained in the Complaint, the mere fact that certain individual incidents might affect a plaintiff's parole status does not satisfy the subject matter and frequency

---

[2] *Cibula* explains that *Cowell* had included a third factor in the inquiry--whether the violations had a degree of permanence that would have triggered the plaintiff's awareness of the duty to assert his or her rights--but, in *Mandel*, 706 F.3d at 165-67, the Circuit Court limited *Cowell's* test for determining whether there was a continuing violation pursuant to *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). 570 F. App'x at 135 n.7.

requirements. Further, Plaintiff does not point to an act which occurred within the limitations period. Thus, allegations related to parole revocation, falsified reports, proceedings against him, and threats related to his cooperation cannot be considered under the continuing violation doctrine. In this rambling Complaint, it appears that almost all, if not all, of the factual allegations relate to these matters. However, we will briefly address other cryptic assertions contained in the complaint.

3.  **Unlawful Detention**

To the extent Plaintiff claims he should be free from unlawful detention (*see, e.g.*, Doc. 1 ¶¶ 9, 22), his claims are not properly raised in this civil rights action. As he has previously been instructed, "prisoners challenging the duration of their confinement or seeking earlier or speedier release must assert such claims in a properly filed habeas corpus action." *Christian v. Pennsylvania Bd. of Probation and Parole*, Civ. A. No. 3:13-CV-2432, 2014 WL 131634, at *2 (M.D. Pa. Jan. 13, 2014) (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1975); *Telford v. Hepting*, 980 F.2d 745, 748 (3d Cir. 1993)).

4.  **Parole Proceedings**

To the extent Plaintiff's conclusory averment concerning "denial of due process where he had a protected liberty interest created by state" (Doc. 1 ¶ 8) and other vague assertions (*see, e.g.*, Doc. 1 ¶ 40), may concern activities within the limitations

period related to parole (*and not* the 2005 revocation of parole), Plaintiff does not state a claim for relief.

A plaintiff's "claim regarding his expectation for parole . . . . fails because the Due Process Clause does not establish a protected liberty interest in the expectation of release on parole." *Alford v. Laguise*, No. 14-3350, ---F. App'x---, 2015 WL 1260141, at *2 (3d Cir. Mar. 19, 2015) (not precedential) (finding the district court properly dismissed a § 1983 inmate plaintiff's claim that in addition to the direct sentence issued at his discplinary hearing he suffered the loss of his privilege of reparole) (citing *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011)). *Alford* adds that "Pennsylvania does not recognize 'a protected liberty interest, or due process rights, in parole until the inmate is actually released on parole.'" *Id.* (quoting *Neives v. Pa. Bd. of Prob. & Parole*, 995 A.2d 412, 418 (Pa. Commw. Ct. 2010); citing *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996)).

Furthermore, although Plaintiff mentions potential future action or harm (*see, e.g.*, Doc. 1 ¶¶ 1, 11, 24), an unidentified hypothetical future injury cannot support this § 1983 action. In the parole context, hypothetical future injury has been found to be too speculative to qualify for the exception to the mootness doctrine. See, *e.g.*, *McLaurin v. Larkins*, 199 F. App'x 193, 1995 (3d Cir. 2006) (not precedential). Here Plaintiff makes no allegation that he has applied for and been denied parole since the

11

2005 revocation and he has not named parties associated with reviewing parole applications. Thus, there is no possible application of the "capable-of-repetition doctrine" which applies "'only in exceptional circumstances, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

5. **Other Allegations**

To the extent other vague assertions found in the complaint may have occurred within the limitations period, we briefly review them here.

Plaintiff mentions his right to protection against self-incrimination. (*See, e.g.*, Doc. 1 ¶ 17.) In *McKune v. Lile*, 536 U.S. 24(2002), the Court considered an inmate's claim that adverse consequences were faced by a state prisoner for refusing to make admissions required for participation in a sexual abuse treatment program and the Court concluded that the consequences were not so severe as to amount to compelled self-incrimination. In so doing, the Court reviewed similar prisoner claims, including *Minnesota v. Murphy*, 465 U.S. 420 (1984), where the Court found no self-incrimination problem despite the criminal defendant's fear of being returned to prison for sixteen months if he remained silent. *Id.* at 42-43. The vague circumstances presented here do not warrant a different conclusion.

In addition to his right against self-incrimination, Plaintiff generally identifies the constitution and laws of the United States as well as denial of due process "where he had a protected liberty interest created by state" as bases for the violations asserted. (*See, e.g.*, Doc. 1 ¶¶ 8, 10, 12.) Plaintiff does not identify the source of the asserted state-created liberty interest.

"A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state." *Asquith v. Dep't of Corrections*, 186 F.3d 407, 409 (3d Cir. 1999).

> Generally, prisoners under confinement do not have inherent liberty interests in particular modes, places, or features of confinement. *See Hewitt v. Helms*, 459 U.S. 460, 466-68, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983), *abrogated by Sandin v. Conner*, 515 U.S. 472, 483, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). The Supreme Court has consistently held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* at 468, 103 S. Ct. 864; *see also Asquith*, 186 F.3d at 410.

*Bacon v. Miner*, 229 F. App'x 96, 98 (3d Cir. 2007) (not precedential). Regarding a liberty interest created by the laws or regulations of a state, *Bacon* adds that "an examination of a state statute or regulation should not be conducted unless the challenged restraint on freedom 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"

13

229 F. App'x at 98 (quoting *Allah*, 229 F.3d at 223; citing *Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002)). "'[T]he baseline for determining what is 'atypical and significant-the 'ordinary incidents of prison life'- is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.'" *Asquith*, 186 F.3d at 412 (quoting *Griffin v. Vaughn*, 112 F.3d 703, 706 & n.2 (3d Cir. 1997)).

Here Plaintiff's assertions include unadorned statements that Defendant Johnson prevented him from receiving institutional support, demanded a specific group requirement and "thereafter" transferred him to another institution. (Doc. 1 ¶ 40.)

Regarding institutional placement, a state prisoner does not have a protected liberty interest in prison transfers or in remaining in a preferred facility within a state's prison system. *Asquith*, 186 F.3d at 410 (citing *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976)); *see also McKeither v. Folino*, 540 F. App'x 76, 78 (3d Cir. 2013) (not precedential) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Griffin v. Vaughn*, 112 F.3d 703, 709 n.3 (3d Cir. 1997)).

Similarly, considered within the legal framework set out above, Plaintiff's claims that Defendant Johnson prevented him from getting institutional support and demanded a specific group requirement (Doc. 1 ¶ 40) do not implicate the violation of

14

constitutional rights under the circumstances presented here.[3]

Whatever the state source of rights alluded to by Plaintiff, there is no indication that Plaintiff faces an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Allah*, 229 F.3d at 223. Considering the baseline for what is considered "atypical and significant"--that is, "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction," *Asquith*, 186 F.3d at 412--participation in institutional programs and failure to gain the support of facility authorities cannot be considered atypical.

Finally, to the extent Plaintiff attempts to make out a claim for retaliation, stating for example that Defendant Johnson "repetitiously punished him for exercising his free speech" (Doc. 1 ¶ 40), he has failed to do so. Retaliation against a prisoner for exercise of his constitutional rights is unconstitutional. *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001). "Section 1983 imposes liability for retaliatory conduct by prison officials if the conduct was motivated 'in substantial part by a desire to punish [the] individual for the exercise of a constitutional right.'" *Crosby v. Piazza*, 465 F. App'x 168, 173 (3d Cir. 2012) (not precedential) (quoting *Allah v. Seiverling*, 229 F.3d 220, 224

---

[3] In some narrow circumstances not applicable here, a requirement that an inmate participate in an institutional program may give rise to a constitutional violation. *See, e.g., Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010).

(3d Cir. 2000); citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

> To prevail on a section 1983 retaliation claim, the prisoner must prove: (1) that the conduct leading to the alleged retaliation was constitutionally protected; (2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him.

*Crosby*, 465 F. App'x at 173 (citing *Rauser*, 241 F.3d at 333). If a prisoner makes the requisite showing, "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.

From Plaintiff's Complaint, we do not know what conduct led to the alleged retaliation, and the vagueness of the actions asserted to be punitive (program assignment, institutional support, transfer to another institution) prevents assessment of the deterrence and substantial/motivating factor elements. Thus, even under a liberal pleading standard, Plaintiff has not stated a plausible claim for retaliation.[4]

---

[4] Retaliation claims based on a prisoners's assertion that, as a result of filing a complaint, he was required to attend additional treatment programs which would impede his ability to seek parole may give rise to a retaliation claim where a plaintiff shows with specificity the impact that his enrollment in the programs has on his ability to seek parole. See *Crosby*, 465 F. App'x at 173-74.

We also note that Plaintiff's retaliation claims present statute of limitations concerns. Though undated, the wrongs asserted are framed sequentially, the last of which is transfer to another institution. (Doc. 1 ¶ 40.) Because of Plaintiff's prolific filing record, we can ascertain from the dockets of his various cases that he has been housed at his current place of confinement, SCI-Rockview, since June 2011. *Christian v. Pa. Parole Board*, 3:11-CV-882 (change of address to SCI-Rockview M.D. filed Pa. June 6, 2011 (Doc. 10)); *see also Christian v. Pa. Board of Probation and Parole*, 3:13-CV-2432; *Christian v. Commonwealth of Pa.*, 3:14-CV-79; *Christian v. Commonwealth of Pa.*, 3:14-CV-2213. Plaintiff was confined at SCI-Smithfield when he filed *Christian v. Pa. Parole Board* on May 10, 2011 (3:11-CV-882 (M.D. Pa. filed May 10, 2011 (Doc. 1 at 22)), and earlier filings show that he was housed at SCI-Smithfield when he filed *Christian v. Pa. Parole Board*, 3:09-CV-2289, on November 20, 2009, *Christian v. Abraham*, 4:10-CV-00005, on January 4, 2010, and *Christian v. Securities and Exchange Commission*, 1:10-CV-478, on March 3, 2010. Though not an exhaustive list of Plaintiff's filings in this Court, it suffices to support a presumption that the retaliatory transfer referenced in his current filing (Doc. 1 ¶ 40) occurred in 2011. As this is outside the relevant statute of limitations discussed above, Plaintiff's related claims of retaliation would be barred on statute of limitations grounds. Similarly, because Plaintiff asserts that the transfer followed improper program assignments and

17

institutional support issues (Doc. 1 ¶ 40), retaliation based on program assignments and institutional support would also be barred.[5]

## 6. **Leave to Amend**

As previously noted, a district court should allow leave to amend prior to dismissal unless amendment would be futile. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002). Based on the analysis set out above, amendment would be futile because the identified shortcomings of Plaintiff's filing cannot be overcome by amendment: the statute of limitations bars many claims we have inferentially culled from the Complaint and others are properly raised in a habeas action or unarguably lack a legal basis in law or fact.[6]

## III. Conclusion

For the reasons discussed, Plaintiff's Complaint is dismissed with prejudice. Plaintiff's application to proceed in forma pauperis (Doc. 8) is approved for this filing only. An appropriate

---

[5] While not technically apparent from the face of the Complaint, we take judicial notice of Court documents in this analysis and no development of the factual record is required, *see Smith*, 260 F. App'x at 455.

[6] If Plaintiff can show that a wrongdoing alleged occurred within the limitations period, he may file a motion for reconsideration in accordance with the Local Rules of Court of the Middle District of Pennsylvania. Upon such a showing, the Court would consider allowing Plaintiff to file an amended complaint.

18

Order is filed simultaneously with this action.

_____
RICHARD P. CONABOY
United States District Judge

DATED: 6-5-15

19